**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Roger Ough HENDERSON, Defendant-Appellant.**

**No. 11408.**

United States Court of Appeals
Seventh Circuit.

June 9, 1955.

---

Hayden C. Covington, Brooklyn, N. Y., Elliott B. Young, Peoria, Ill., for appellant.

John B. Stoddart, Jr., U. S. Atty., John M. Daugherty, Marks Alexander and Robert B. Oxtoby, Asst. U. S. Attys., Southern Dist. of Illinois, Springfield, Ill., for appellee.

Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This appeal involves the refusal of Local Draft Board No. 158, McDonough County, Illinois, hereinafter sometimes referred to as the "board," to reopen and consider anew the classification of the defendant under Selective Service Regulations § 1625.1 et seq., of Title 32 of the Code of Federal Regulations. The defendant, Roger Ough Henderson, insists that the local board wrongfully refused to reopen and consider anew his classification; that, since his classification as I-O he had changed his vocation, had become a full time minister, and was entitled to a IV-D classification; and that, because of the refusal of the board to reopen his classification, he was not guilty of the charge of refusing to carry out the orders of the board in violation of 50 U.S.C.A.Appendix § 462, the charge upon which he was tried and convicted.

The defendant registered on September 16, 1948. His registration questionnaire, which was returned to the board December 9, 1948, stated that the defendant had worked continuously since 1942 with his father on the home farm which consisted of 280 acres, and that in 1949 he intended also to farm 80 acres of land which belonged to his aunt. In that questionnaire Henderson stated that he was a conscientious objector, but he made no claim to exemption as a minister.

In the conscientious objector form which the defendant executed he stated that he was a member of the religious organization, Jehovah's Witnesses, and had been a part time minister for the past nine years, going from house to house publicly witnessing to his belief. The defendant's claim to a IV-E classification as a conscientious objector was granted by the local board June 2, 1949. On March 5, 1951, the board reclassified

the defendant as I–A, and a month later he was ordered to report for a physical examination. This examination indicated that the defendant was physically fit for military training and service.

A few days later the defendant appeared before the board and stated that he had been an active member of Jehovah's Witnesses since July 21, 1949, that he was a minister going from house to house passing out literature and that he tried to get out every Thursday to distribute this church literature. In this interview the defendant also stated that Jehovah's Witnesses "is an unprofitable [sic] organization" and that the "ministry is not connected as vocational." The board denied his claim to exemption as a conscientious objector, but the defendant appealed and the local board was ordered by the appeal board to classify the registrant as I–O. This the board did and then promptly notified the defendant of such change in his classification.

On July 14, 1952, while his appeal was still pending, the defendant wrote a letter to the board stating that he had new evidence which he claimed entitled him to a ministerial classification. The new evidence to which the defendant referred was a certificate of his appointment, on May 1, 1952, as a "pioneer" minister by the Watchtower Bible and Tract Society. This certificate was a typewritten form executed by T. J. Sullivan, Superintendent of Ministers and Evangelists of the Watchtower Bible and Tract Society, and it stated that:

"This is to certify that Roger Henderson is a duly ordained minister of Jehovah's witnesses, engaged, as his customary vocation, in preaching and teaching the principles of this Society and administering the rites and ceremonies thereof in public worship.

"He has been duly ordained in accordance with the principles prescribed by this Society. This was by a public ceremonial on July 1, 1940 * * *. Since such date he has been recognized by this Society as qualified to represent it in such capacity.

"He was duly appointed on May 1, 1952, as a 'pioneer' minister and acts as a direct representative of this organization and has since been organizing and establishing churches and generally preaching the doctrines and principles of Jehovah's witnesses in a territory assigned to him. * * *

"He is therefore declared and certified by this Society to be, in accordance with its principles, a duly ordained minister, having the qualifications to preach 'the gospel of God's kingdom'. * * * "

It is to be noted that this certificate, while dated July 8, 1952, stated that the defendant had been appointed a full time minister "effective" May 1, 1952. Prior to his request that his classification be reopened and considered anew, the defendant had filed numerous affidavits of members and officials of his church which stated that the defendant was an ordained minister of that church and recited the work he had done as a minister. But after the submission of the defendant's certificate of appointment as a "pioneer" minister, the record of the local board fails to reveal any further evidence submitted prior to the time of its decision not to reopen the defendant's classification.

Section 1625.2 of 32 C. F. R. provides that "The local board may reopen and consider anew the classification of a registrant (1) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification * * *." When this entire record which was before the board is considered, we think there was probably a basis in fact on which the board could have decided either to grant or to refuse the defendant's request.

On August 28, 1952, the board decided against the defendant. But the

decision was on an erroneous theory. The action of the board in denying the defendant's request was described in a memorandum written by the secretary of the board and made a part of the defendant's file. This memorandum stated that "the local board did not reopen the case because the Watchtower Bible and Tract Society was not recognized as an agency." While there is some conflict in the evidence as to just what was said and as to what was in the minds of the members of the board to cause their secretary to make this record as to the reason for the board's refusal to reopen the registrant's classification, it seems perfectly clear that the members of the board, when they made the decision, were of the opinion that the Watchtower Bible and Tract Society was merely the publishing house or branch of Jehovah's Witnesses and, therefore, was without power to appoint ministers of that faith.

Mr. Dunbar, the chairman of the local board, testified in the District Court that the board had instructed its secretary as to its reason for refusing to reopen the defendant's classification. He stated that he had possibly made the statement in this respect and explained that " * * we did not recognize this, the Watchtower, we feel, or at least I felt and some of the board members felt, that the Watchtower is a publication of Jehovah's Witnesses from all the correspondence and books he had on the desk, and we have never ever said Jehovah's Witnesses wasn't a religious group or sect, no, but we didn't recognize this Watchtower as Jehovah's Witnesses. That is what was said, or words to that effect, anyway. * * * We felt that it [the Watchtower] was a part of Jehovah's Witnesses, yes, but we felt it was nothing more than the publication since—For example, the Presbyterian Church, you get the Presbyterian Life. It's a publication of the Presbyterian Church. That's what we felt this was." Mr. Dunbar also said that the board felt that the pioneer certificate issued to the defendant by the Watchtower Bible and Tract Society was nothing more than a letter from the publishing branch of the Jehovah's Witnesses.

The Watchtower Bible and Tract Society has long been recognized by the Selective Service System as the legal governing body of Jehovah's Witnesses, and it is at least partly because of this incorporated society, its purposes and activities, that the members of Jehovah's Witnesses are considered as belonging to a "recognized religious sect." See United States v. Balogh, 2 Cir., 157 F.2d 939, 941–43 footnote. The local board was, therefore, not privileged to base its decision on its erroneous belief that the appointment of the defendant as a "pioneer" minister by the Watchtower Bible and Tract Society was not an appointment by the governing body of a recognized religious sect. There was no basis in fact or in law for such a finding.

Since the board's refusal to reopen and consider anew the defendant's classification was founded upon this erroneous theory or belief of the board members, the board's orders to the defendant subsequent to its refusal to reopen his classification were a nullity, and the defendant's refusal to obey such orders did not constitute a violation of 50 U.S.C.A.Appendix, § 462.

The decision of the District Court is Reversed.