**UNITED STATES of America**

v.

**Robert Lee DAVIS.**

**Crim. No. 11769.**

United States District Court
D. Connecticut.

April 4, 1967.

Jon Newman, U. S. Atty., John Cassidento, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Ira Grudberg, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

In this case, tried to the Court [1] without a jury, the defendant was charged

---

1. Trial was held on December 13, 1966 and December 20, 1966. The Court had the benefit of the local board's entire file on this matter as exhibits and the testimony of the following witnesses: Shirley M. DeMatteo, Clerk of Local Board 8, New Haven, Robert Lee Davis, the defendant, Shielah M. Davis, the defendant's wife, Edward W. Cohen, Secretary of the local board, and Major Frederick H. Russell, Manpower Officer, State Headquarters of the Selective Service System.

with failure to comply with an order to report for and submit to an Armed Forces physical and mental examination, in violation of Title 50 U.S.C.(App.) § 462 (a).

On March 4, 1963, the defendant registered with the Selective Service System, Local Board No. 8 in New Haven, Connecticut. In his Classification Questionnaire (SSS Form 100), filed August 12, 1963, he indicated he was a conscientious objector who was opposed to participation in war in any form and requested the board to furnish him with the Special Form for Conscientious Objector (Form 150). This form contains a series of questions to be answered concerning a registrant's religious training and beliefs. On September 9, 1963, the board classified him I-A without having sent him Special Form 150. On April 12, 1965, the defendant was ordered to report for a preinduction physical on May 11, 1965. He failed to appear. Another order to report for a pre-induction physical on October 4, 1965 was sent to the defendant on September 24, 1965. Between these dates, on September 30, 1965, during the course of a visit to the local board office, the defendant was handed Form 150 to be filled out and returned. He neglected to return it.

On October 4, 1965, the defendant, having become a Black Muslim in April, 1965, refused to submit to a physical examination claiming exemption on religious grounds. The matter was referred to the State Director for an opinion regarding prosecution. On October 12, 1965, the State Director, noting the lack of a completed Form 150 in the file, ordered another form sent to Davis and ordered his classification reopened and considered anew.

After Davis returned a completed Form 150 on October 29, 1965, the board reviewed his case and reclassified him I-A on November 17, 1965. A Classification Card, indicating his reclassification and the administrative remedies available to him to contest the board's decision, was mailed to the defendant that day. Davis claims he never received this notification.

In December, 1965, the defendant was ordered to appear for a pre-induction physical on January 24, 1966. He failed to respond. On February 2, 1966, Davis was notified the board had declared him a delinquent and he was ordered to appear immediately. He again failed to respond. On February 24, 1966 he was ordered to report for induction on March 9, 1966. On March 4, 1966, he advised the board he thought his wife was pregnant. He was requested to obtain a doctor's verification and on March 7, 1966, the board granted him a postponement of induction until April 7, 1966. When the defendant failed to substantiate the claimed pregnancy, he was ordered on April 1, 1966 to report for induction on April 18, 1966. The defendant reported as directed but refused to submit to a medical examination.

The matter was referred to the State Director on April 19, 1966 for approval to prosecute. In response, Major Russell advised the board by telephone and mail on April 28, 1966 to obtain further information from the defendant by the use of a more detailed questionnaire and by a personal appearance. On May 18, 1966, the board requested the defendant to appear within a week and to fill out the questionnaire. Davis ignored the request. On June 1, 1966, the clerk of the board notified the State Director of the defendant's continued lack of cooperation and, on June 22, 1966, the State Director authorized referral of the case to the United States Attorney's office for prosecution. The defendant was indicted on July 6, 1966.

It is not disputed the defendant knowingly failed to comply with an order of his local board to submit to an Armed Forces physical and mental examination on April 18, 1966. The defendant claims, however, that his I-A classification was arbitrary and capricious, that he was deprived of the opportunity to seek his administrative remedies because he was not given an adequate notification of his classification status and appeal time, and

that the State Director's letter of April 28, 1966 was, in effect, an order to cancel his induction and to reopen and reconsider his classification.

I

The defendant's failure to assert his administrative remedies now precludes him, absent unusual circumstances, from raising as a defense in this action the correctness of his classification. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). No unusual circumstances exist here which would warrant a relaxation of this rule. The defendant not only failed to exhaust his available administrative procedures; he ignored the entire remedial process altogether. United States v. Palmer, 223 F.2d 893, 896 (3 Cir. 1955), cert. denied, 350 U.S. 873, 76 S.Ct. 116, 100 L.Ed. 772 (1955); United States v. Hogans, 253 F. Supp. 409, 411 (E.D.N.Y.1966), aff'd., 369 F.2d 359 (2 Cir. 1966). Cf. Glover v. United States, 286 F.2d 84 (8 Cir. 1961).

The Court gives no credence to the defendant's contention he did not receive notice of his classification and his administrative remedies. The defendant's history of inordinate indifference to many of the board's orders and communications, alone, is adequate justification for this finding. See also, 32 C.F.R. § 1641.3 (1962), Selective Service Regulations.[2] In addition, the board's communications to him in late 1965 and early 1966, which he does not deny receiving, were sufficient to alert him to his I–A

classification. See 32 C.F.R. § 1641.5 (1962), Selective Service Regulations.[3] By his own admission, he knew of his I–A classification in March, 1966. At no time did he attempt to avail himself of the opportunity to have the board's rejection of his conscientious objector status reviewed by an appeal.[4] It seems apparent to the Court that the defendant, during this period of time, decided to abandon any attempt to convince either the local board or appeal board of the alleged improper classification; instead, he set out on a new course of avoidance of military service by claiming exemption on the basis of his wife's alleged pregnancy. Under these circumstances, he may not now challenge the validity of the board's order.

It may be noted, however, that even were it appropriate for this Court to review the action of the board, there is sufficient affirmative evidence in the record to support the defendant's classification. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Hogans, 369 F.2d 359 (2 Cir. 1966). The ambiguities, omissions and inconsistencies in the defendant's answers to the questions in Form 150, alone, supplied an adequate basis upon which the board could justifiably reject his claim for exemption. The record further reveals the board discussed and considered the matter to an extent which provides the necessary "basis in fact" to sustain its decision.

2. Section 1641.3 of the Regulations provides:
"It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not."

3. Section 1641.5 of the Regulations provides:
"The Classification Record (SSS Form No. 102) shall be open to the public at

the local board office. It shall be the duty of each registrant to keep himself informed of his status, and any entry concerning him on the Classification Record (SSS Form No. 102) shall constitute due legal notice thereof to him and to all other interested persons."

4. Under Section 1626.2(d) of the Regulations the local board may permit an appeal even though the period for taking an appeal has elapsed if it is satisfied there was a lack of understanding by the applicant of his rights.

## II

Defendant's final contentions concern the effect of Major Russell's oral and written communications to the Board in April.

When the defendant refused to be inducted on April 18, 1966, the matter was referred to the State Director.[5] In response Major Russell wrote the following letter to the board on April 28, 1966:

"The cover sheet for the subject registrant is enclosed.

In reviewing the file, we have noted that the local board did not require a personal appearance by the registrant in connection with his claim of conscientious objection. Since the claim of being a conscientious objector is of such a highly personal nature and depends on the sincerity of the registrant, it would be considered a necessity to require a personal appearance before the local board. Since the determination of the claim is of a technical nature and may eventually lead to review by the courts, it is essential that the local board maintain accurate and complete entries of action taken in order to have a complete file available for possible Appeal Board action. The local board should in every case support in writing its reasons for classifying the registrant in Class I–O or I–A–O or for rejecting his claim and classifying him I–A.

After further action has been taken by the local board, we would appreciate having the cover sheet returned to this Headquarters."

The following day, Major Russell telephoned the clerk of the board and stated he neglected to mention in his letter that he also recommended the board have the defendant fill out a special form "if and when registrant is called in for a personal appearance." On May 17, 1966, the board met and decided not to interview the defendant or reopen his case but did instruct the clerk to write him and request him to appear to submit answers on a special conscientious objector questionnaire. On May 18, 1966, the clerk wrote to the defendant and requested his appearance within a week to fill out the questionnaire. The defendant ignored the request. On June 1, 1966 the State Director was notified of the defendant's continued lack of cooperation and, on June 22, 1966, the State Director authorized referral of the case for prosecution.

The defendant construes the letter of April 28th as a written request to reopen his classification which the local board, in violation of 32 C.F.R. § 1625.3(a) (Supp.1966), Selective Service Regulations,[6] refused to do. Relying on United States v. Stepler, 258 F.2d 310 (3 Cir. 1958), he contends the board's failure to comply with the State Director's request vitiated the entire proceeding.

5. Paragraph 9, Local Board Memorandum No. 14, reads:

"(a) Whenever a registrant who has claimed that he is a conscientious objector or a minister of religion and who has been ordered to report for induction, fails to report for, or to submit to, induction, the local board shall forward the delinquent registrant's cover sheet to the State Director of Selective Service for review and a determination as to whether the registrant shall be reported to the United States Attorney for prosecution. Each cover sheet shall be accompanied by a memorandum or letter of transmittal indicating that it is being forwarded under the provisions of this memorandum.

(b) In such cases the local board shall not report the registrant to the United

States Attorney on Delinquent Registrant Report (SSS Form 301) unless the State Director of Selective Service determines that the registrant shall be reported for prosecution."

6. 32 C.F.R. § 1625.3(a), Selective Service Regulations, provides:

"(a) The local board shall reopen and consider anew the classification of a registrant upon the written request of the State Director of Selective Service or the Director of Selective Service and upon receipt of such request shall immediately cancel any Order to Report for Induction (SSS Form No. 252) or Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) which may have been issued to the registrant."

■ Defendant's reliance on *Stepler* is misplaced. There the registrant vigorously and conscientiously pursued his administrative remedies. The State Director called the attention of the local board to the fact that it had denied the registrant a ministerial classification on a basis which was "not in accord with the law and regulations." Despite the concededly illegal action on its part, the board replied that it "refuses to reopen." Under these circumstances the Court of Appeals held there was not a full and fair compliance with the provisions of the Selective Service Regulations. In the instant case, as noted hereinbefore, the classification of Davis was in accord with the law and regulations. It was not a denial of due process for the local board, without a hearing, to classify Davis I–A solely on the basis of the information contained in his file. Moreover, unlike Stepler, Davis willfully failed to follow his administrative remedies and continually ignored the requests and orders of the local board.

■ Although it is true that Major Russell's letter does contain seemingly directive language, he testified that prior to sending the letter a decision had been made by the State Director not to request the board to reopen and reconsider Davis' classification. The letter, therefore, was not an order under section 1625.3(a). The language in the letter was culled verbatim from a Memorandum issued to the local board on February 6, 1966 by the State Director. The purpose of the Memorandum was merely to suggest certain "guidelines" in order "to assure uniformity in the processing and disposition of cases concerned with conscientious objectors." These guidelines were intended to be recommendations only. While the recommended procedures in the letter were not prerequisites to lawful action by the local board, the board's attempt in this case to follow them was thwarted by the applicant's own conduct. In any event, these new guidelines were promulgated by the State Director several months after Davis was reclassified. The new procedures were not intended by the State Director, nor will the Court construe them, to apply retroactively to void the otherwise valid actions of the local board in this case.

The record satisfactorily discloses that the purpose of the letter was to obtain further information for the State Director to determine whether a recommendation for prosecution was warranted. When the board was unable to obtain the defendant's cooperation in providing the additional information, the State Director authorized referral of the case to the United States Attorney on June 22, 1966. This June 22nd letter is consistent with the purpose of the April 28th letter. Had the April 28th communication been intended as a request to reopen under section 1625.3(a), the State Director in June certainly would have noticed the board's violation of his request and would have refused to authorize the referral. In this connection it is noted that on a prior occasion in October, 1965 in this same case the State Director refused to authorize prosecution when he found the board had acted contrary to the regulations and, in mandatory terms, he requested the board to reopen, consider anew and reschedule the defendant for another preinduction physical examination if he was classified again in I–A.[7]

Accordingly, under all the circumstances, the defendant is guilty as charged in the one count indictment, No. 11769.

7. The request of the State Director to reopen classification is clearly distinguishable from a mere request for additional information. The State Director's letter of October 11, 1965 reads in pertinent part:

"Kindly mail to the registrant another Form 150 with a heading properly completed indicating a date for return of the form. After SSS Form 150 has been placed in the file, classification should be reopened and considered anew. After the registrant has been reclassified and if reclassified again in Class I–A, re-schedule him for another preinduction physical examination to insure that every action taken is proper." Compare State Director's letter of April 28, 1966.